GEORGETOWNE LTD. PARTNERSHIP, APPELLANT, v. GEOTECHNICAL
SERVICES, INC., APPELLEE.

430 N.W.2d 34

Filed September 30, 1988.    No. 86-870.

Patrick W. Meyer and Gordon R. Hauptman, of Westergren, Hauptman, O'Brien, Wolf & Hadley, P.C., for appellant.

Larry E. Welch, of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WARREN, D.J.

WARREN, D.J.

This is an appeal by Georgetowne Ltd. Partnership from the dismissal of its negligence action against Geotechnical Services, Inc. (Geotech), after a separate trial to the court on the issue of the statute of limitations defense.

On October 4, 1978, after performing soil tests and analysis for Georgetowne, Geotech submitted to plaintiff a written consultation report evaluating soils and making foundation recommendations for the proposed construction of commercial buildings at a site near 140th Street and West Center Road in Omaha. Separate from its services for plaintiff, Geotech later performed compaction tests at the same site for a building contractor. The shopping center building was completed by April 1979.

Subsequently, two problems developed which plaintiff alleges were caused by the negligence of Geotech in failing to properly investigate subsoils and evaluate and report thereon, as a result of which the building settled. In February 1982, a Georgetowne representative notified Geotech that a crack had appeared in the floor of a restaurant located in the building. Geotech investigated, after which, on March 26, 1982, it advised Georgetowne that the crack was not caused by settling and could be remedied simply by filling it with grout. In March 1983, the crack reappeared, there were vertical cracks found on the building face through the brick, the roof would not drain water due to a change in the roof line, and a plate glass window in the restaurant shattered for no apparent reason. Secondly, a

floral business tenant complained of the smell of gas around its premises. The fire marshal and Metropolitan Utilities District employees investigated and attributed the methane gas (swamp gas) to decaying matter in the soils. Geotech was again notified of these problems, and it investigated. On April 8, 1983, the plaintiff's architect notified Georgetowne that he had detected a 2-inch settlement of floor lines and doorsills, and he advised that the crack in the restaurant floor was possibly caused by settlement which could be occurring further down in the lower soils. The architect requested that Geotech return to the site and investigate settlement of the building as a possible cause. On April 18, 1983, Geotech gave plaintiff an estimate of costs for further testing. Georgetowne was also investigating other possible causes.

After an April 25, 1983, meeting with its architect and a representative of another soil engineering firm, Woodward-Clyde, during which Geotech's 1978 report was discussed and criticized, the Georgetowne representative called an attorney as directed by her superior to discuss representation of Georgetowne regarding its legal rights against Geotech. On April 27, 1983, this same employee, Nancy Pratt, delivered a letter to Geotech advising it that Georgetowne had relied upon Geotech's soil report of October 4, 1978, requesting Geotech to return to the site and make all necessary tests at its own expense to determine the cause of the settling, and concluding as follows:

> The cracked floor in Godfathers and improper roof drainage are two of the problems that are apparent at this time. To the extent these damages and other undisclosed damages have occurred or may occur as a result of incomplete or inaccurate soil investigations, we would as [sic] Geotechnical Services to make the necessary repairs and take other preventative actions made necessary by the situation (subject to our prior approval of construction methods.).

Woodward-Clyde then performed test borings, and its findings were presented to Georgetowne on June 14, 1983, by a report dated June 8, 1983. Plaintiff filed suit June 7, 1984.

After an evidentiary hearing, the district court dismissed

plaintiff's second amended petition for the reason that the action was barred by the statute of limitations governing professional services set forth in Neb. Rev. Stat. § 25-222 (Reissue 1985). The trial court specifically found that (1) defendant Geotech was a civil engineering firm which provided professional services within the meaning of § 25-222; (2) Geotech performed its services for plaintiff on October 4, 1978; (3) Georgetowne's cause of action was not discovered and could not have been reasonably discovered within 2 years from October 4, 1978, and, therefore, plaintiff had 1 year from the date of discovery or the discovery of facts which would reasonably lead to such discovery, whichever was earlier, to commence its action; (4) by April 27, 1983, plaintiff had discovered sufficient facts that the statute of limitations had commenced to run; (5) plaintiff's cause of action was barred by the limitation of § 25-222 on April 27, 1984; and (6) the statute of limitations had run by the time the suit was filed on June 7, 1984.

Plaintiff assigns as error that the court erred in (1) determining that the commencement date for the running of the statute of limitations was April 27, 1983, rather than June 8, 1983, and (2) determining that the appropriate statute of limitations was § 25-222, instead of Neb. Rev. Stat. § 25-223 (Reissue 1985). We affirm.

There is no question that Geotech had fully performed its soil testing services as of the date of its report on October 4, 1978. Similarly, no one contends that Georgetowne could have reasonably discovered its cause of action within 2 years thereafter. Therefore, the question is, When did Georgetowne have sufficient facts to discover its cause of action? Plaintiff contends that the statute of limitations did not begin to run until June 8, 1983, when the Woodward-Clyde report was completed.

A defendant alleging the statute of limitations as an affirmative defense has the burden to prove such defense. *League v. Vanice*, 221 Neb. 34, 374 N.W.2d 849 (1985). The point at which a statute of limitations commences to run must be determined from the facts of each case. *Suzuki v. Holthaus*, 221 Neb. 72, 375 N.W.2d 126 (1985). In our review of the

district court's judgment on the issue of the statute of limitations, the finding and decision of the district court, unless clearly wrong, will not be set aside. *League v. Vanice, supra.*

Discovery, as applied to statutes of limitations, refers to the fact that one knows of the existence of an injury or damage and not that he or she has a legal right to seek redress in court. A cause of action accrues, and the statute of limitations begins to run, when there has been discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery. See *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979).

Here, Georgetowne was aware of damage to its building as early as February 1982. While its earlier determination of the cause was hindered by Geotech's initial report that settling was not the cause of the floor crack, on April 8, 1983, Georgetowne became aware of building damage which its architect said could have been caused by settlement occurring in the subsoils. On April 11, 1983, Georgetowne's property manager was directed to "pick up Geotech's 1978 report . . . and store it in the fire safe." It is a fair inference that that order was for the purpose of preserving evidence for a claim against Geotech. However, if there was any question as to the extent of plaintiff's discovery prior to April 27, 1983, Georgetowne effectively dispelled any doubts by its demand letter of April 27 to Geotech, part of which we have quoted above. A further quote from that letter is illuminating:

> Further, we suspected settlement as early as February 1982 when a crack appeared in the floor of Godfathers. At that time . . . you ruled out settlement as the cause of this crack . . . . Now the same problem is apparent again and settlement is clearly obvious from changes in the roofline.

Clearly, the finding of the trial court that the statute of limitations began to run on April 27, 1983, was correct and fully supported by the evidence. There is no merit in plaintiff's first assignment of error.

Section 25-222 provides:

> Any action to recover damages based on alleged

professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier . . . .

The next issue for the court was whether Geotech was rendering professional services to Georgetowne within the meaning of § 25-222. This court has previously held that professional services under § 25-222 were provided by architects and engineers, in *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985), and by architects, in *Williams v. Kingery Constr. Co.*, 225 Neb. 235, 404 N.W.2d 32 (1987). The most recent analysis of what constitutes professional negligence has defined a "profession" as a calling requiring specialized knowledge and often long and intensive preparation, including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service. *Tylle v. Zoucha*, 226 Neb. 476, 412 N.W.2d 438 (1987). The testimony here established that Geotech was a specialty engineering firm providing consulting services for all aspects of soils and foundations to architects, owners, and agencies involved in construction projects. Registered and licensed civil engineers, who had college degrees, provided the engineering services. There can be no doubt that Geotech was rendering professional services as defined by this court.

Georgetowne urges by its last assignment of error that § 25-223 is the applicable statute of limitations. Section 25-223 reads:

Any action to recover damages based on any alleged

breach of warranty on improvements to real property or based on any alleged deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property shall be commenced within four years after any alleged act or omission constituting such breach of warranty or deficiency. If such cause of action is not discovered and could not be reasonably discovered within such four-year period, or within one year preceding the expiration of such four-year period, then the cause of action may be commenced within two years from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. . . .

Georgetowne argues that the services provided by Geotech involved the "design" or "planning" of the building and that even if its services fall within the professional services statute of limitations (§ 25-222), Georgetowne is entitled to the benefit of the 2-year postdiscovery provision of § 25-223 because of the longstanding rule that where different statutes of limitations are equally applicable, the one allowing the longer period governs. *Crum v. Johnson*, 3 Neb. (Unoff.) 826, 92 N.W. 1054 (1902). Georgetowne further argues that the last expression of legislative will is law, and in the case of conflicting provisions in different statutes of limitations, the last in point of time or order of arrangement prevails. See *Stoller v. State*, 171 Neb. 93, 105 N.W.2d 852 (1960). Section 25-223 was adopted by the Legislature in 1976, while § 25-222 dates from 1972.

When asked to interpret a statute, the Supreme Court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. It is our duty to discover, if possible, legislative intent from the statute itself. *NC+ Hybrids v. Growers Seed Assn.*, 219 Neb. 296, 363 N.W.2d 362 (1985). One of the fundamental principles of statutory construction is to attempt to ascertain the legislative intent and to give effect to that intent. To ascertain the intent of the Legislature, a court may examine the legislative history of the act in question. *Spence v. Terry*, 215 Neb. 810,

340 N.W.2d 884 (1983).

While the chief proponents of 1972 Neb. Laws, L.B. 1132 (§ 25-222), were from the medical community, the intention of the Legislature, as demonstrated by legislative history, was to pass a statute inclusive of all professionals. Exemplary discussion was as follows:

SENATOR LUEDTKE: How would this relate to lawyers and architects? You mentioned it as professional negligence, malpractice, etc.

MR. WRIGHT: Well, I think a malpractice case, as I interpret it, a professional negligence case, is one that is based upon the failure of the person performing special service, to render the degree of care that is ordinarily rendered by accepted practitioners in his service, in his area, or in similar areas in the country. If he fails to render that quality of service, he is then guilty of malpractice, or, in effect, causes damage, then a cause of action arises. This would cover malpractice cases, generally.

SENATOR LUEDTKE: This is what I was getting at. This would also cover the lawyers, the architects, and everybody.

MR. WRIGHT: Right.

Judiciary Committee Hearing, L.B. 1132, 82d Leg., 2d Sess. 18-19 (Jan. 17, 1972).

On the other hand, 1976 Neb. Laws, L.B. 495, which eventually became § 25-223, was sponsored by the Home Builders Association with some comment from the Associated General Contractors of America. In committee hearings, Senator Cavanaugh testified that the bill related to "seting [sic] the statute of limitations on construction of homes and home warranties." Miscellaneous Subjects Committee Hearing, L.B. 495, 84th Leg., 1st Sess. 55 (Feb. 27, 1975). At the same hearing, the attorney for the Home Builders Association, Mr. Beam, referring to construction contractors, stated: "I think this is the only major segment of business in Nebraska that does not have the statute of limitations of any kind . . . ." *Id.* at 58-59. Continuing and referring to § 25-222, Beam said: "It says all professional people, and I assume if they're professional people, they're covered under the statute. We think it's a matter

of simple equity that builders have the same rights." Miscellaneous Subjects Committee Hearing, *supra* at 60. Furthermore, there was no discussion in the legislative history that architects, engineers, or other design professionals would fall under § 25-223. We think it is clear that the Legislature did not intend in enacting § 25-223 to carve out an exception to § 25-222, but, rather, it intended to provide protection to a different class of persons other than the professionals already covered by § 25-222.

All statutes relating to the same subject are considered as parts of a homogeneous system, and later statutes are considered as supplementary to preceding enactments. Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together. *Matzke v. City of Seward*, 193 Neb. 211, 226 N.W.2d 340 (1975). Courts should not give an interpretation to a statute which would have the effect of nullifying another statute, when obviously that was not the clear legislative intent. *Livestock Carriers Div. of M. C. Assn. v. Midwest Packers Traf. Assn.*, 191 Neb. 1, 213 N.W.2d 443 (1973). It is clear from the legislative history that § 25-222 applies to professional services and that § 25-223 applies to nonprofessional builders or contractors making improvements to real property, and such interpretation harmonizes the two statutes.

This court has already provided such an interpretation in two recent cases. In *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985), plaintiff sustained damages to his home, which he had constructed, when a water pipe broke. He sued the general contractor, the architect, the engineer, the plumbing subcontractor, and the manufacturer of the pipe. All defendants were involved in providing services or products for improvements to realty. The appeal resulted when the trial court sustained motions for summary judgment filed by defendants, alleging application of various statutes of limitations applicable to the various defendants. The manufacturer of the pipe raised the defense of the statute of limitations provided by Neb. Rev. Stat. § 25-224 (Reissue 1985), applicable to causes of action for products liability. The contractor raised the defense of the statute of limitations in § 25-223 (improvements to real

property). The architect and the engineer each raised the defense of § 25-222. This court disposed of the various defenses based on the respective statutes of limitations raised, despite the fact that all defendants had provided services or materials for the improvement of the real property. Regarding the architect, the court said: "Again, however, whether pled in tort or contract, there can be no question that the period of professional repose contained in Neb. Rev. Stat. § 25-222 (Reissue 1979) applies." *Witherspoon, supra* at 125, 362 N.W.2d at 42. The court then went on to also apply § 25-222 to the professional services rendered by the engineer.

In *Williams v. Kingery Constr. Co.*, 225 Neb. 235, 404 N.W.2d 32 (1987), this court has again recently held that § 25-222 is applicable to bar the cause of action against an architect, Davis, Fenton, Stange & Darling, but applied § 25-223 to bar the cause of action against a contractor, Kingery Construction Company, while specifically holding that architects and engineers are professionals for the purposes of § 25-222.

We see no reason to depart from the holdings in these two most recent cases. The trial court was correct in applying the provisions of § 25-222 to plaintiff's cause of action and in dismissing plaintiff's petition.

AFFIRMED.