REQUESTED BY: Senator Don Wesely Nebraska State Legislature
Whether Neb. Rev. Stat. § 68-1019 and68-1021 (1993 Supp.) are pre-empted by42 U.S.C. § 1396r-8(f)(1), otherwise known as the Omnibus Reconciliation Act of 1990 (OBRA '90).
No. The co-payment provisions of Neb. Rev. Stat. § 68-1019 and 68-1021 are consistent with federal statutes and regulations which specifically allow states to implement co-payment plans for specified Medicaid recipients. The OBRA '90 moratorium found at 42 U.S.C. § 1396r-8(f)(1) only prevents reduction in the limits for covered outpatient drugs and not the source of payment for the providers. Finally, the case which has addressed the moratorium in relation to co-payments is not binding precedent on the United States District Court for the District of Nebraska. Medicaid Program Background
The Medicaid program, enacted in 1965 as Title XIX of the Social Security Act, is a cooperative federal/state program designed to furnish medical assistance to eligible low income individuals. See 42 U.S.C. § 1396
et seq.; Atkins v. Rivera, 477 U.S. 154, 156-57 (1986); Schweiker v. Hogan, 457 U.S. 569, 571-72 (1982); and Harris v. McRae, 448 U.S. 297, 301 (1980). The program is jointly financed by the federal and state governments and is administered by the states. Id. While participation in the Medicaid program is voluntary, participating states must submit a plan that fulfills the requirements established by the Medicaid statute, its implementing regulations, and other requirements imposed by the Secretary of Health and Human Services. 42 U.S.C. § 1396a. See Schweiker v. Gray Panthers, 453 U.S. 34, 36-37 (1981). See also42 C.F.R. § 430.10 et seq. State Medicaid plans must be approved by the Secretary.42 U.S.C. § 1316(a)(1) and 42 C.F.R. § 430.15. Upon approval of its plan, a state becomes entitled to reimbursement known as "federal financial participation" from the federal government for a portion of its payments to providers, including pharmacists furnishing services to Medicaid recipients.42 U.S.C. § 1396b(a) and 42 C.F.R. § 430.1 and430.30. A state that has chosen to participate in the Medicaid program is entitled to include expenditures for prescription drugs among the costs reimbursable by the federal government. 42 U.S.C. § 1396a(a)(10)(A) and 1396d(a)(12).
Although it is possible to argue that42 U.S.C. § 1396r-8(f)(1), otherwise known as OBRA '90, imposes a moratorium on establishing a plan of co-payments or deductibles on Medicaid recipients, it is the opinion of this office that such an interpretation is inconsistent with federal Medicaid statutes and regulations and the basic rules of statutory construction.
The co-payment provisions found in Neb. Rev. Stat. § 68-1019 and 68-1021 (1993 Supp.) are consistent with federal statutes and regulations which specifically allow states to implement co-payment plans for specified Medicaid recipients.42 U.S.C. § 1396o(b)(1) states, "(For certain Medicaid recipients) there may be imposed an enrollment fee, premium, or similar charge. . . ." Clearly this statute allows a state to impose co-payment charges and deductibles on a Medicaid recipient. Additionally, federal regulations found at42 C.F.R. § 447.55(a) provide that, "the plan may provide for a standard, or fixed, co-payment amount for any service." The federal authorization could not be any clearer.
Additionally, when using basic rules of statutory construction,42 U.S.C. § 1396r-8(f)(1) does not affect any state attempting to implement a co-payment or deductible plan. When interpreting a statute, one must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. In re Interest of Powers, 242 Neb. 19, 493 N.W.2d 166 (1992); and Georgetowne Limited Partnership v. Geotechnical Services, Inc., 230 Neb. 22, 430 N.W.2d 34 (1988). Also, as far as practicable, one must give effect to the language of the statute and reconcile different statutory provisions so that parts of a statute are consistent, harmonious, and sensible. Rosnick v. Marks, 218 Neb. 499, 357 N.W.2d 186 (1984).
42 U.S.C. § 1396r-8(f)(1) states:
 (A) During the period of time beginning on January 1, 1991, and ending on December 31, 1994, the Secretary may not modify by regulation the formula used to determine reimbursement limits described in the regulations under 42 C.F.R. § 447.331 through 42 C.F.R. § 447.334 (as in effect on November 5, 1990) to reduce such limits for covered outpatient drugs.
 (B) During the period of time described in subparagraph (A), any state that was in compliance with the regulations described in subparagraph (A) may not reduce the limits for covered outpatient drugs described in subparagraph (A) or dispensing fees for such drugs.
In the opinion of this office, the plain, ordinary, and popular meaning of the language in this statute only has effect on the regulations found at 42 C.F.R. § 447.331 through 42 C.F.R. § 447.334. These regulations merely set the aggregate upper limits of payment, the upper limits for multiple source drugs, the state plan requirements regarding the upper limits, and the upper limits for drugs furnished as part of services. These regulations only set forth the upper limits and the methodology that must be used in establishing a formula to calculate the reimbursement rates for pharmacies providing services and drugs to Medicaid recipients. The statute does not in any way mention the regulations authorizing the co-payments found at42 C.F.R. § 447.55. Therefore, the moratorium has no force and effect so as to prevent a state from instituting a co-payment or deductible plan. Additionally, the plain language in the statute only prevents a reduction in the limits for covered outpatient drugs and dispensing fees and does not affect the source of said payments. The limits as established by the Nebraska Department of Social Services and approved by the Health Care Financing Administration establish a formula or methodology for calculating said limits. The current formula uses an average wholesale price per drug unit minus 8.71 percent multiplied by the units per prescription plus a pharmacy dispensing fee (AWP — 8.71%) * units + dispensing fee. This formula was in effect as of January 1, 1990, and has not been changed. It sets the limits for reimbursement allowed by the Department of Social Services and is not changed under the new co-payment and deductible plan. This formula is what is used to calculate the limits which are referred to the in the moratorium. Medicaid providers are still entitled to that amount calculated under the formula. However, the source of that amount is now being divided between the state and the Medicaid recipients. The co-payment amounts imposed under the Department plan are $2 per prescription. This $2 per prescription is a legal obligation that the Medicaid recipients have and may be enforced by the Medicaid providers in a civil action to collect the fee. Therefore, the amounts that the Medicaid providers are entitled to is not changed, and the moratorium has no force and effect on the co-payment plan. Additionally, when you consider OBRA '90 in conjunction with the entire Medicaid statutory scheme and regulations, it is common sense to limit the force and effect of the moratorium to the upper limits and not to the co-payment plans. Otherwise, any attempt to change any aspect of the reimbursement scheme would be impossible. Such an interpretation would incapacitate the government and prevent it from adapting to an ever changing society. Therefore, it would defy logic to expand the scope of the moratorium set forth in OBRA '90 beyond the upper limits of reimbursement set by 42 C.F.R. § 447.331 through 447.334.
You also expressed concern over whether LB 808 would withstand a challenge in federal court given the recent decision of Pharmaceutical Society of the State of New York, Inc. v. New York State Department of Social Services, 1994 W.L. 33369 (N.D.N.Y.). Although it is impossible to predict the results of any litigation with a large degree of certainty, it is the opinion of this office that a challenge to Nebraska's co-payment and deductible plan could be defended with a reasonable chance of success.
In addition to the reasons set forth above, the case in New York which found that a co-payment plan was in violation of OBRA '90 has little precedential value in the United States District Court for the District of Nebraska. The case was heard by the U.S. District Court for the Northern District of New York. It has well been established that district court decisions are not binding on other district courts, particularly outside their federal circuit. Such decisions only serve as an example of the reasoning and rationale behind one court's decision based on the particular facts of that case. Therefore, the Nebraska courts are not obligated to follow the reasoning in Pharmaceutical Society of the State of New York, Inc., Id.
There are some factors which should be considered in the event there is a challenge of the Nebraska law. On January 10, 1994, the United States District Court for the Northern District of New York issued a final order generally in favor of the plaintiff. However, this order has been appealed to the Court of Appeals for the Second Circuit. The Attorney General's Office for the State of New York is convinced that their position is meritorious. One argument that will be advanced by the State of New York is that the district court's rationale essentially bifurcated the term "reimbursement limits," and read the word "limits" out of the phrase. Thus, the thrust of the court's reasoning was that there was a reduction of reimbursement. The co-payment system places no reduction or restriction on limits. The OBRA '90 moratorium only prevents reduction in the limits, not the source. We would submit that had Congress been of the opinion that implementation of a co-payment plan was a reduction in payment "limits," it would have plainly prohibited such co-payment plans with respect to drugs for states in compliance with the regulation. Further, it should be noted that the United States District Court for the Northern District of Florida, Tallahassee Division, in the case of Florida Pharmacy Association v. Williams (No. TCA 92-40142-MMP) on November 8, 1993, granted summary judgment for the defendant on the identical issue of co-payments that was before the court in New York and is now an issue in Nebraska. In the Florida case, the legislature passed an appropriation bill that directed the agency to implement a co-payment program for Medicaid prescription drugs. The Florida court found that the one dollar co-payment program was not in conflict with the moratorium imposed by OBRA. The court stated, "a co-payment simply means that the Medicaid recipient pays a part of the cost of drugs. Thus, it does not change how much reimbursement pharmacists receive; they are still entitled to the same amount of reimbursement as before."
In view of the above, it is the opinion of this office that there is a good chance that Neb. Rev. Stat. § § 68-1019 and 68-1021 (1993 Supp.) could be defended and determined to be valid legislation.
Sincerely, DON STENBERG Attorney General Royce N. Harper Senior Assistant Attorney General 15-10-14.op cc: Patrick J. O'Donnell Clerk of the Legislature Approved by: ______________________________ Attorney General