KENNETH JORGENSEN, APPELLANT, V. STATE NATIONAL BANK &
TRUST COMPANY, A NATIONAL BANKING CORPORATION, APPELLEE.
583 N.W. 2d 331

Filed August 21, 1998.   No. S-97-297.

David E. Copple and Melissa A. Schrant, of Copple &
Rockey, P.C., for appellant.

James M. Bausch and Shawn D. Renner, of Cline, Williams,
Wright, Johnson & Oldfather, for appellee.

WHITE, C.J., CAPORALE, CONNOLLY, GERRARD, STEPHAN, and
MCCORMACK, JJ.

CONNOLLY, J.

This appeal presents a question whether "retirement plan-
ners" are "professionals" within the meaning of Neb. Rev. Stat.
§ 25-222 (Reissue 1995). We conclude that the retirement plan-
ners in the instant case are not professionals and that they did
not render professional services; therefore, we reverse, and
remand for further proceedings.

## BACKGROUND

State National Bank and Trust Company (Bank) was the cus-
todian of Kenneth Jorgensen's individual retirement account

(IRA). Bank's employees rendered certain advice to Jorgensen concerning his IRA that resulted in the disqualification of Jorgensen's IRA by the Internal Revenue Service. Jorgensen subsequently filed a petition in the district court for Wayne County against Bank for negligent misrepresentation, fraudulent representation, negligence, breach of good faith, and unfair and deceptive acts. Bank filed a motion for summary judgment, contending that Jorgensen's cause of action was barred by the applicable statute of limitations. The issue was whether Bank's employees were professionals rendering professional services pursuant to § 25-222, Nebraska's professional negligence statute.

The evidence indicates that Thomas McClain, Bank's senior trust officer, and Lori Bebee, an assistant trust officer, were involved in rendering advice to Jorgensen concerning his IRA. McClain stated that there were no written policies or procedures concerning Bank's IRA's. When additional information was required concerning an IRA, McClain contacted legal counsel. Bank did not have any policy requiring anyone to review an IRA to ensure that it was in compliance with the rules and regulations concerning IRA's; rather, Bank's employees relied on "Banker Assistance Forms." McClain stated that he sometimes reviewed accounts based on "curiosity."

Bebee stated that the only role assumed by Bank in handling an IRA was to "fill out the forms." She had no knowledge as to whether Bank's employees maintained notes or records concerning conferences they may have had with IRA holders. Further, Bebee stated that there were no documents that could be provided to an IRA holder to explain the holder's IRA.

Bank's trust department employees were not licensed in any manner concerning retirement planning. McClain had held a securities dealer license, but he relinquished it when he came to work at Bank. McClain had attended 2 years of college. He had also attended seminars dealing with IRA's. However, he had only "limited" experience in the investments area prior to working at Bank. Bebee had attended a school of commerce for 1 year, taking courses in the secretarial area. She had also attended seminars, but stated that Bank did not require her to

attend them on a yearly basis, nor had she attended such seminars annually.

The district court, without analysis, concluded that Bank's employees were professionals and, therefore, that § 25-222 applied. Because the district court concluded that Jorgensen's petition was not filed within the time specified by § 25-222, Bank's summary judgment motion was sustained.

## ASSIGNMENTS OF ERROR

Jorgensen asserts that the trial court erred in (1) determining that Nebraska's professional negligence statute of limitations applied; (2) finding that the last prohibited transaction in Jorgensen's IRA occurred on May 23, 1993, and that Jorgensen discovered the problems with the IRA not later than March 11, 1994, thereby barring Jorgensen's claim pursuant to § 25-222; and (3) finding that the continuous relationship doctrine did not apply.

## SCOPE OF REVIEW

Which statute of limitations applies is a question of law that an appellate court must decide independently of the conclusion reached by the trial court. *PSB Credit Servs. v. Rich*, 251 Neb. 474, 558 N.W.2d 295 (1997).

## ANALYSIS

Bank contends that Jorgensen's petition admitted that Bank's employees were professionals and that the admission is dispositive of this appeal. Jorgensen's petition stated that he "relied upon the investment advice offered by the Bank for the reason that the employees of the Bank were either trust officers or other professionals who professed to have a specific knowledge regarding IRA accounts and Bank was a qualified custodian for retirement accounts." Jorgensen's petition also stated that Bank had "held itself out as possessing special skill, knowledge, experience, and expertise regarding investments and provided its customers with advice concerning investments to be held, individual retirement accounts, and other accounts."

It is true that "[a] judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evi-

dence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of *fact* alleged by the opponent is true." (Emphasis supplied.) *U S West Communications v. Taborski*, 253 Neb. 770, 784, 572 N.W.2d 81, 91 (1998). However, whether or not Bank's employees were professionals within the meaning of § 25-222 is an issue of law, not fact. A party cannot judicially admit conclusions of law in the pleadings—pleadings admit only facts. See *Christianson v. Educational Serv. Unit No. 16*, 243 Neb. 553, 501 N.W.2d 281 (1993). Accordingly, we must determine, as a matter of law, whether Bank's employees were professionals pursuant to § 25-222.

Section 25-222 states:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided,* if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further,* that in no event may any action be commenced to recover damages for professional negligence or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

This court addressed § 25-222 in *Educational Service Unit No. 3 v. Mammel, O., S., H. & S., Inc.*, 192 Neb. 431, 222 N.W.2d 125 (1974), wherein we held, without analysis, that the statute applied to retirement planners.

Subsequently, in *Taylor v. Karrer*, 196 Neb. 581, 244 N.W.2d 201 (1976), a medical malpractice case, this court defined profession as an occupation " 'involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.' " *Id.* at

585, 244 N.W.2d at 204, quoting *Marx v. Hartford Acc. & Ind. Co.*, 183 Neb. 12, 157 N.W.2d 870 (1968).

Based upon the broad definition adopted in *Taylor*, this court held that accountants, see *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 338 N.W.2d 594 (1983), and architects and engineers, see *Witherspoon v. Sides Constr. Co.*, 219 Neb. 117, 362 N.W.2d 35 (1985), were professionals. Clearly, those occupations, like retirement planning, involve "predominantly mental or intellectual" endeavors rather than "physical or manual" labors.

However, this court redefined professional in *Tylle v. Zoucha*, 226 Neb. 476, 412 N.W.2d 438 (1987), wherein we addressed whether real estate brokers were professionals. We acknowledged that real estate brokerage is a predominantly mental or intellectual occupation. *Id.* Nonetheless, we held that real estate brokers were not professionals pursuant to § 25-222. In reaching this conclusion, this court stated that the definition in *Taylor* of profession as an occupation emphasizing mental rather than physical labor, although true of real estate brokerage, is insufficient to qualify an occupation as a profession. *Tylle v. Zoucha, supra.* We stated that the following definition of profession best defines the term:

> "[A profession is] a calling requiring specialized knowledge and often long and intensive preparation including instruction in skills and methods as well as in the scientific, historical, or scholarly principles underlying such skills and methods, maintaining by force of organization or concerted opinion high standards of achievement and conduct, and committing its members to continued study and to a kind of work which has for its prime purpose the rendering of a public service . . . ."

*Id.* at 480, 412 N.W.2d at 440. Accord *Lawyers Title Ins. Corp. v. Hoffman*, 245 Neb. 507, 513 N.W.2d 521 (1994), quoting *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988). We noted that the latter definition "stresses the long and intensive program of preparation to practice one's chosen occupation traditionally associated only with professions," *Tylle v. Zoucha*, 226 Neb. at 480, 412 N.W.2d at 441,

rather than the difference between manual and intellectual labor, and that the mere possession of a license was not dispositive.

Although the *Tylle* definition radically altered the criteria by which this court would determine whether an occupation was a profession, this court subsequently affirmed its prior holdings concerning architects and engineers, see *Board of Regents v. Wilscam Mullins Birge*, 230 Neb. 675, 433 N.W.2d 478 (1988); accountants, see *St. Paul Fire & Marine Ins. Co. v. Touche Ross & Co.*, 244 Neb. 408, 507 N.W.2d 275 (1993); and retirement planners, see *Maloley v. Shearson Lehman Hutton, Inc.*, 246 Neb. 701, 523 N.W.2d 27 (1994), all without any analysis. Because our prior decisions holding that retirement planners are professionals were made pursuant to the disapproved *Taylor* definition rather than the *Tylle* definition of professional, we must revisit the issue.

This court first applied the *Tylle* definition in *Georgetowne Ltd. Part. v. Geotechnical Servs., supra.* In *Georgetowne Ltd. Part.*, we held that a specialty engineering firm providing consulting services for all aspects of soils and foundations rendered professional services. In so holding, we noted that the civil engineers performing the services were "[r]egistered and licensed" and had "college degrees." *Id.* at 27, 430 N.W.2d at 38. Accordingly, we stated that "[t]here can be no doubt that [the engineering firm] was rendering professional services as defined by this court." *Id.* Thus, although we have not previously defined the parameters of the "long and intensive program of preparation" required by the *Tylle* definition, *Georgetowne Ltd. Part.* indicates that a college degree embodies such characteristics and that licensing, although not dispositive, strongly indicates that an occupation is a profession.

Applying the *Tylle* definition to the instant case, we can conclude only that Bank's employees were not professionals and did not render professional services. Neither McClain nor Bebee had any specialized knowledge requiring long and intensive preparation. According to Bebee, Bank's employees were expected to do nothing more than fill out forms. Bank's employees did not hold licenses and did not regularly supplement their educations, such as they were, nor were Bank's employees subject to an ethical code enforced by a disciplinary system. In the

absence of such characteristics, we cannot say that they maintained by force of organization high standards of achievement and conduct or committed themselves to continued study. Finally, there is no evidence that the kind of work performed by Bank's employees in the instant case had for its prime purpose the rendering of a public service. Based on the evidence adduced, we conclude that Bank's employees, even if characterized as "retirement planners," were not professionals. Accordingly, the district court erred in determining that § 25-222 applied to the instant case.

## CONCLUSION

Bank's employees are not professionals and did not render professional services within the meaning of § 25-222. Because § 25-222 does not apply to the instant case, we need not address Jorgensen's remaining assignments of error.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., not participating.

CAPORALE, J., concurring.

I agree that in the absence of a constitutional challenge to Neb. Rev. Stat. § 25-222 (Reissue 1995), this court could do nothing more than apply its prior definition of "professional" and conclude that under the circumstances in this case, the employees of the defendant, State National Bank and Trust Company, were not such. Eschewing, upon more mature reflection, the references to the legislative record made in my concurrence in *Tylle v. Zoucha,* 226 Neb. 476, 412 N.W.2d 438 (1987), see, e.g., *Southern Neb. Rural P.P. Dist. v. Nebraska Electric,* 249 Neb. 913, 546 N.W.2d 315 (1996) (Caporale, J., concurring, joined by Lanphier, J.), I nonetheless adhere to my earlier conclusion that this court's case-by-case analysis of the issue in an effort to save the Legislature's enactment of § 25-222 is overambitious. The judicial experience following our decision in *Tylle* makes it clearer than ever that the Legislature's failure to articulate a meaningful classificatory scheme requires the courts to do more than apply a legislatively defined classification to a particular set of facts.

MCCORMACK, J., joins in this concurrence.