JAMES A. ADAMS, APPELLANT, AND REBECCA Z. ADAMS,
APPELLEE, V. MANCHESTER PARK, L.L.C., A NEBRASKA LIMITED
LIABILITY COMPANY, AND SOUTHFORK HOMES, INC.,
A NEBRASKA CORPORATION, APPELLEES.

___ N.W.2d ___

Filed November 10, 2014.    No. A-13-429.

1. **Summary Judgment.** Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
3. **Summary Judgment.** Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.
4. ____. If a genuine issue of fact exists, summary judgment may not properly be entered.
5. **Summary Judgment: Proof.** The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law.
6. **Summary Judgment: Evidence: Proof.** After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion.
7. **Summary Judgment.** In the summary judgment context, a fact is material only if it would affect the outcome of the case.
8. **Limitations of Actions: Appeal and Error.** The point at which a statute of limitations commences to run must be determined from the facts of each case.
9. **Limitations of Actions: Pleadings.** If a petition alleges a cause of action ostensibly barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute.

Appeal from the District Court for Douglas County: J. MICHAEL COFFEY, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

James A. Adams, of Law Offices of James A. Adams, P.C., L.L.O., pro se.

Larry E. Welch, Sr., of Welch Law Firm, P.C., for appellee Manchester Park, L.L.C.

Patrick S. Cooper, of Fraser Stryker, P.C., L.L.O., for appellee Southfork Homes, Inc.

INBODY, Chief Judge, and IRWIN and BISHOP, Judges.

INBODY, Chief Judge.

## INTRODUCTION

James A. Adams appeals the order of the Douglas County District Court granting the motions for summary judgment of appellees Manchester Park, L.L.C. (Manchester), and Southfork Homes, Inc. (Southfork). For the reasons that follow, we affirm in part, and in part reverse and remand for further proceedings.

## STATEMENT OF FACTS

Manchester previously owned a subdivision in Omaha, Douglas County, Nebraska, consisting of numerous residential lots near 168th and Locust Streets. The specific lot at issue in this case is lot 178. In September and October 2003, the subdivision was graded and tested for soil compaction and field density by an engineering and inspection firm under the supervision of a professional engineer registered in the State of Nebraska. On October 3, a field density report was completed for those lots, including lot 178, and the results for lot 178 were reported as "Adeq[uate]." On October 4 and 8, the lot was retested and the results on both days were reported as "Pass."

In 2004, Southfork entered into a purchase contract with Manchester Park for the purchase of lot 178. The contract contains a provision which provides:

> [Manchester] makes no representation or warranty concerning the soil compaction, buildable quality or bearing capacity of the soil of the Property. [Southfork] agrees that it is solely [Southfork's] responsibility to make appropriate tests to determine the buildable quality of the Property. If any tests conducted by [Southfork] with regard to bearing values be unsatisfactory to [Southfork], [Southfork] may rescind this Purchase Contract, and the Purchase Price, or so much thereof as has been paid, will be refunded, provided that [Southfork's] right to

rescind and recover such Purchase Price shall expire at closing, or upon commencement of any grading or excavation operations on the Property, whichever date is earlier. [Southfork] acknowledges in the preparation of the lot for sale, certain changes in the contour of the Property's terrain and slope may have been made which could have an effect upon the drainage of both the lot and area in general. [Southfork] does hereby acknowledge these circumstances and does hereby release and discharge [Manchester] from any and all responsibility for the buildable quality of the lot and the control of surface water of any kind.

On August 9, 2006, James and Rebecca Z. Adams, as husband and wife, executed a purchase agreement with Southfork for the purchase and construction of a residence upon lot 178. The purchase agreement between Southfork and the Adamses provides the following:

### Buyer-Owned Job Site

Special consideration is needed when building on a home site that is not owned or optioned by **Southfork/ Highland Homes**. In the event additional (or removal) fill dirt is required and/or unforeseen grading becomes necessary, all associated costs will be borne by the purchaser. It is also the responsibility of the purchaser to be certain the home site is buildable. . . . Special design footings or foundation costs caused by the nature of the building site will also be borne by the purchaser/buyer.

It was not until August 18 that the warranty deed for lot 178 between Southfork and Manchester was executed.

On September 19, 2007, the Adamses completed the final walk-through and homeowner orientation inspection of the home. At that time, Southfork issued a 1-year "New Home Limited Warranty" to the Adamses for material defects in workmanship or materials. The warranty specifically provided that the builder would repair certain repairs during the first year and informs that "[n]on-structural cracks are not unusual in concrete foundation walls," that "[m]inor cracks in concrete basement floors are common," and that "[s]mall non-structural cracks are not unusual in mortar joints of masonry

foundation walls." The warranty deed was filed with the Douglas County register of deeds on October 3.

According to the Adamses, within approximately 6 months, they began to notice problems with the home, including cracking, heaving, and other defects in the foundation. The Adamses' home experienced roof leaks, basement tiles that were heaving and cracking, and numerous windows that would not open. The Adamses immediately contacted Southfork for inspection and repair of the conditions pursuant to the 1-year limited warranty. In her affidavit, Rebecca indicated that she was told by Southfork to wait "until the one year mark" for any and all drywall repairs, because those would only be completed one time pursuant to the 1-year limited warranty. In or around September 2008, Southfork hired a contractor to repair the cracks in the drywall, but shortly thereafter, the cracking reappeared. Several service providers were contacted from 2007 to 2009 to repair the drywall cracks, roof leaks, windows, doors, and cracking tile in the basement floor. In December 2009, the Adamses hired a company specializing in basement repair to inspect the problems, which company reported to the Adamses that there was a potential issue with the foundation of the home.

In July 2011, Thiele Geotech, Inc., performed site visits, test borings, and laboratory testing on the Adamses' residence. The Thiele Geotech representative, Bob Matlock, observed a separation of the poured wall from the framing in the northwest corner of the residence and a similar gap between the poured wall and west edge of the garage floor. Matlock further observed that the conditions in the interior of the residence were consistent with movement observed at the exterior of the residence. In its testing, Thiele Geotech performed three test borings on the soil of lot 178. Matlock reported to the Adamses that the grading and compaction in lot 178 did not meet "City of Omaha compaction specifications." Matlock concluded that the movement and related damage "is likely related to consolidation and settlement of fill placed across the rear of the residence during original development." Matlock indicated that currently there was no severe structural

damage, but that additional movement should be expected and would continue.

On September 22, 2011, the Adamses filed a complaint against Manchester and Southfork which alleged a breach of implied duty to perform in a workmanlike manner and warranty of habitability, negligence, fraudulent concealment, and breach of express warranty. Southfork filed an answer and affirmative defenses that the Adamses failed to state a claim upon which relief may be granted, that the Adamses failed to plead with particularity, and that the complaint was barred by the statute of limitations and the parties' purchase agreement. Manchester filed a similar answer.

Thereafter, both Manchester and Southfork filed motions for summary judgment. A hearing on the motions was held, and evidence was received by the district court.

On February 13, 2013, the district court entered an order granting Manchester's and Southfork's motions for summary judgment. The court found there was no question of fact that lot 178 was graded and tested in September and October 2003 and that the Adamses moved into the residence on lot 178 in September 2007 and received a warranty deed in October 2007. The court further found there was no question that the applicable statute of limitations ran in September 2007, 4 years after the grading was completed in 2003. However, because the Adamses did not occupy the residence until September 2007, they could not have discovered or learned facts which would have reasonably led to the discovery of the alleged deficiencies within the original 4-year statute of limitations. The court determined there was no genuine issue of material fact that the Adamses discovered the deficiencies

> which while not necessarily indicative of the specific cause of said deficiencies would have led persons of ordinary intelligence and prudence on inquiry, if pursued, to the discovery of facts constituting the basis of the cause of action and which in fact did lead in this instance to the discovery of the alleged deficiency constituting the basis of the cause of action herein.

The court found that those deficiencies were discovered by the Adamses between March and September 2008 and that in applying the 2-year discovery exception to the statute of limitations, the result was the statute of limitations expired, at the latest, in September 2010, which was 1 year prior to the filing of the complaint.

The court further determined that in addition to the statute of limitations, there was no dispute that the Adamses had the obligation to be sure that the lot was buildable pursuant to the August 2006 purchase agreement with Southfork. Further, the court found there was no genuine issue of material fact that neither Manchester nor Southfork had fraudulently concealed, either by deception or by a violation of a duty, material facts which prevented the Adamses from discovering the alleged soil compaction deficiency.

The Adamses filed a motion for new trial and rehearing, which was overruled. On April 23, 2013, the district court entered an amended order finding that the previous order dismissing the complaint be amended to include sustaining the motion for summary judgment as to count VI as well. It is from this order that James has timely appealed to this court.

## ASSIGNMENT OF ERROR

James assigns, rephrased and consolidated, that the district court erred in granting Manchester's and Southfork's motions for summary judgment and dismissing the Adamses' complaint.

## STANDARD OF REVIEW

[1,2] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor*, 287 Neb. 182, 842 N.W.2d 50 (2014). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id*.

## ANALYSIS

James argues the district court erred by sustaining Manchester's and Southfork's motions for summary judgment on the bases that the Adamses' complaint was time barred by the statute of limitations and that the Adamses had a contractual obligation to ensure that lot 178 was buildable under the terms of the purchase agreement. Further, James argues that the district court erred in failing to find that the doctrine of fraudulent concealment barred the statute of limitations defense.

[3,4] Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Harris v. O'Connor, supra*. Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute. *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013). If a genuine issue of fact exists, summary judgment may not properly be entered. *Id.*

[5-7] The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Id.* After the movant for summary judgment makes a prima facie case by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence was uncontroverted at trial, the burden to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law shifts to the party opposing the motion. *Id.* In the summary judgment context, a fact is material only if it would affect the outcome of the case. *Id.*

James argues that summary judgment was not proper because there was a genuine issue of material fact related to the statute of limitations.

Neb. Rev. Stat. § 25-223 (Reissue 2008) provides:

> Any action to recover damages based on any alleged breach of warranty on improvements to real property or

based on any alleged deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property shall be commenced within four years after any alleged act or omission constituting such breach of warranty or deficiency. If such cause of action is not discovered and could not be reasonably discovered within such four-year period, or within one year preceding the expiration of such four-year period, then the cause of action may be commenced within two years from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. In no event may any action be commenced to recover damages . . . more than ten years beyond the time of the act giving rise to the cause of action.

[8,9] The point at which a statute of limitations commences to run must be determined from the facts of each case. *Reinke Mfg. Co. v. Hayes*, 256 Neb. 442, 590 N.W.2d 380 (1999); *Teater v. State*, 252 Neb. 20, 559 N.W.2d 758 (1997); *Gordon v. Connell*, 249 Neb. 769, 545 N.W.2d 722 (1996); *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 430 N.W.2d 34 (1988). If a petition alleges a cause of action ostensibly barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute. *Teater v. State, supra*.

James argues that the district court erred by granting Manchester's and Southfork's motions for summary judgment and dismissing the Adamses' complaint. In this case, well before the Adamses became involved in any contracts to purchase lot 178, Southfork entered into a purchase contract with Manchester for the purchase of lot 178 in 2004. The contract contains a provision which provides:

[Manchester] makes no representation or warranty concerning the soil compaction, buildable quality or bearing capacity of the soil of the Property. [Southfork] agrees that it is solely [Southfork's] responsibility to make appropriate tests to determine the buildable quality of the Property. If any tests conducted by [Southfork] with regard to bearing values be unsatisfactory to [Southfork],

[Southfork] may rescind this Purchase Contract, and the Purchase Price, or so much thereof as has been paid, will be refunded, provided that [Southfork's] right to rescind and recover such Purchase Price shall expire at closing, or upon commencement of any grading or excavation operations on the Property, whichever date is earlier. [Southfork] acknowledges in the preparation of the lot for sale, certain changes in the contour of the Property's terrain and slope may have been made which could have an effect upon the drainage of both the lot and area in general. [Southfork] does hereby acknowledge these circumstances and does hereby release and discharge [Manchester] from any and all responsibility for the buildable quality of the lot and the control of surface water of any kind.

On August 18, 2006, the warranty deed between Manchester and Southfork was executed. Thus, in 2004, when Southfork entered into a contractual agreement with Manchester, Southfork knew or should have known about possible defects in the grading of the lot and was in a position of knowledge regarding the buildable quality of lot 178, well before any agreement was entered into with the Adamses. The record indicates that Southfork, at no time, performed any testing on the grading or soil for lot 178.

Southfork argues that the Adamses assumed responsibility for the buildable quality of lot 178 through the contractual language contained within the purchase agreement between Southfork and the Adamses. That specific language provides:

### Buyer-Owned Job Site

Special consideration is needed when building on a home site that is not owned or optioned by **Southfork/ Highland Homes**. In the event additional (or removal) fill dirt is required and/or unforeseen grading becomes necessary, all associated costs will be borne by the purchaser. It is also the responsibility of the purchaser to be certain the home site is buildable. . . . Special design footings or foundation costs caused by the nature of the building site will also be borne by the purchaser/buyer.

On August 9, 2006, although Southfork and the Adamses entered into a purchase agreement for the sale of lot 178 and

the construction of a new home, the Adamses did not own lot 178. Instead, Southfork had previously entered into a contract to purchase the lot from Manchester, which lot was deeded to Southfork on August 18. The Adamses are not contractually responsible to ensure the buildable quality of the lot, and instead, the responsibility remains with Southfork. The district court erred in its determination that the Adamses were contractually required to ensure that the lot was buildable, which responsibility rested, pursuant to the 2004 contract between Manchester and Southfork, with Southfork. Manchester had no contractual obligation to the Adamses, and the district court did not err in granting Manchester's motion for summary judgment and in dismissing the Adamses' complaint as to Manchester.

As noted above, the basic statute of limitations applicable in this case is "four years after any alleged act or omission constituting [a] breach of warranty or deficiency." § 25-223. The statute of limitations pursuant to § 25-223 between Southfork and the Adamses for a breach of warranty would not begin at the time the lot was graded in 2003, as Southfork argues, because the Adamses were not in any position to have any knowledge about the grading completed at that time.

On September 19, 2007, Southfork issued a 1-year limited warranty to the Adamses. Almost immediately thereafter, the Adamses began to have problems with the home, which problems Southfork indicated were natural in the first year of a newly built home. Those problems included, but are not limited to, cracks in the drywall, windows which would not open, roof leaks, "nail pops," door misalignment, and tile cracking in the basement. The Adamses contacted Southfork for repair pursuant to the limited warranty and were instructed to wait until the end of the warranty, at which time repairs would be made all at one time. In or around September 2008, a year after the warranty was issued, Southfork hired a contractor to make repairs to the drywall. The 1-year limited warranty expired at that time in September 2008.

The record indicates that almost immediately after the expiration of Southfork's warranty, the Adamses began to observe recurring problems as they had since moving into the home.

The Adamses contacted Southfork, which refused to do anything further, and so through September 2010, the Adamses contacted and hired various contractors to make repairs on the foundation, windows, drywall, flooring, and doors.

It is at this point in the case, at the expiration of the 1-year limited warranty on September 19, 2008, that the statute of limitations pursuant to § 25-223 commenced for an action based on an "alleged breach of warranty on improvements to real property or based on any alleged deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property" between Southfork and the Adamses. The Adamses filed their complaint against Southfork with the district court in September 2011, which is well within the 4-year statute of limitations pursuant to § 25-223. The district court erred when it determined, as a matter of law, that the statute of limitations had run, preventing the Adamses from pursuing their action against Southfork when the statute of limitations had clearly not yet expired. Therefore, we reverse the order of the district court granting Southfork's motion for summary judgment and dismissing the Adamses' complaint against Southfork, and we remand the matter for further proceedings.

Having determined that the district court erred in determining there was no genuine issue of material fact and that the Adamses timely filed their complaint prior to the expiration of the statute of limitations in § 25-223, we need not address James' contention that the district court erred by finding there to be no fraudulent concealment which would estop Southfork from claiming a statute of limitations defense. See *Svehla v. Beverly Enterprises*, 5 Neb. App. 765, 567 N.W.2d 582 (1997) (appellate court need not engage in analysis which is not needed to adjudicate case and controversy before it).

## CONCLUSION

In sum, we conclude that the district court did not err in granting Manchester's motion for summary judgment and dismissing the Adamses' complaint. However, with regard to Southfork, we find that the district court erred in finding that there were no genuine issues of material fact as to the

statute of limitations, in granting Southfork's motion for summary judgment, and in dismissing the Adamses' complaint. Therefore, we reverse the order of the district court granting Southfork's motion for summary judgment and remand the matter as to the Adamses' complaint against Southfork back to the district court for further proceedings consistent with this opinion.

Affirmed in part, and in part reversed and remanded for further proceedings.

---

State of Nebraska, appellee, v.
Agok Arok Agok, appellant.
___ N.W.2d ___

Filed November 10, 2014.    No. A-14-141.

1. **Postconviction: Proof: Appeal and Error.** A defendant requesting postconviction relief must establish the basis for such relief, and the factual findings of the district court will not be disturbed unless they are clearly erroneous.
2. **Postconviction: Constitutional Law: Proof.** A defendant moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the state or federal Constitutions.
3. **Attorneys at Law: Appeal and Error.** Attorneys of record of the respective parties in the court below shall be deemed the attorneys of the same parties in the appellate court, until a withdrawal of appearance has been filed.
4. **Criminal Law: Attorneys at Law: Appeal and Error.** Counsel in any criminal case pending in an appellate court may withdraw only after obtaining permission of the appellate court.
5. **Criminal Law: Attorneys at Law: Notice: Appeal and Error.** Counsel appointed in the district court to represent a defendant in a criminal case other than a postconviction action shall, upon request by the defendant after judgment, file a notice of appeal and continue to represent the defendant unless permitted to withdraw by the appellate court.
6. **Effectiveness of Counsel: Appeal and Error.** A defendant's desire to argue that trial counsel was ineffective gives rise to a potential conflict of interest, precluding trial counsel from continued representation of the defendant on appeal.
7. **Right to Counsel: Courts: Appeal and Error.** When trial counsel files a motion to withdraw in the appellate court due to a conflict of interest, the appellate court shall issue an order to the district court directing it to appoint counsel if the defendant requests counsel be appointed and shows by affidavit to the district court that he is indigent.