STATE OF NEBRASKA, APPELLEE, V. RODNEY R. BLEVINS, APPELLEE.

523 N.W.2d 701

Filed November 1, 1994.    No. A-94-162.

David G. Wondra, Kearney County Attorney, for appellant.

Andrew J. McMullen for appellee.

CONNOLLY, IRWIN, and MILLER-LERMAN, Judges.

IRWIN, Judge.

After a trial in the county court for Kearney County, Rodney R. Blevins was convicted of discharging a firearm from a public highway, Neb. Rev. Stat. § 28-1335 (Reissue 1989), and hunting without permission, Neb. Rev. Stat. § 37-510 (Cum. Supp. 1992). Pursuant to the conviction for hunting without permission, Blevins was ordered to pay liquidated damages of $600, as required by Neb. Rev. Stat. § 37-614 (Cum. Supp. 1992). On appeal, the district court for Kearney County reversed Blevins' conviction for hunting without permission and the liquidated damages order.

This court granted the application of the county attorney to docket an appeal, as authorized by Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 1992). The State claims that the district court erroneously held that the State must prove that the

property on which a defendant was hunting was posted. We find that the State is not required to prove that the landowner's property was posted in a prosecution under § 37-510, and the county attorney's exceptions are therefore sustained.

## FACTUAL BACKGROUND

On November 15, 1992, Gary Younkin, a farmer in Kearney County, was exiting his driveway onto Highway 10 when he observed a white pickup truck parked about five-eighths mile away, on the west shoulder of the highway. The pickup was parked facing north, adjacent to land that Younkin farmed. Because it was the opening weekend of deer-hunting season, Younkin suspected that the pickup contained hunters. Younkin drove toward the pickup, intending to warn persons inside that the property adjacent to the pickup was private property and that they could not hunt on such property. There were no signs posted on the Younkin property reading "Hunting By Written Permission Only." As Younkin approached the pickup, he observed that the driver's-side door was open and that a person was standing beside the door with a rifle held to his shoulder in "a shooting position." Younkin looked in the direction that the rifle was pointed and observed three deer in the cornfield, about 150 to 175 yards from the road. When Younkin reached a point about 125 yards from the white pickup, he noticed that the rifle recoiled as if it had been fired. Younkin then saw one of the three deer, an antlered buck, fall.

Younkin proceeded to pull up behind the pickup and motioned for the persons inside to leave. As the pickup was pulling away, Younkin wrote down its description and license number on a sheet of paper. Younkin then reported what he had observed to Dayton Shultis, a Nebraska Game and Parks Commission conservation officer who was working at a deer checkpoint station in the area.

When Younkin returned to the farm, he sent his hired hand out into the cornfield to see whether there was a dead deer lying there. The hired hand discovered a dead antlered buck in the vicinity where Younkin had earlier observed the deer fall.

Meanwhile, Shultis contacted the Kearney County Sheriff's Department and discovered that the white pickup that Younkin

had described belonged to Rodney Blevins. That same morning, Shultis went to Younkin's farm and observed the deer that Younkin's hired hand had discovered in the field. Shultis observed that the deer had one bullet wound. Shultis also inspected the field where the deer had been found and observed a large pool of blood. Shultis testified at trial that he believed the deer had traveled less than 20 yards after it had been shot.

The following week, Shultis phoned Blevins and arranged to meet with him in Kearney on November 20. On that date, Blevins met with Shultis and told him that he had shot the deer on land owned by David Raffety and that he had trailed the deer to the Younkin property. Blevins stated that he assumed that the deer he shot at on the Younkin property was the same deer he had shot on Raffety's property. When Shultis told Blevins that the deer had only one bullet hole, Blevins replied, " 'Well, I'm wrong on that one.' " Shultis then issued Blevins a citation for hunting without permission, shooting from a public highway, and liquidated damages.

Trial was held in the county court for Kearney County on April 20, 1993. At the trial, Blevins pled guilty to shooting from a public road, and the court accepted the plea. During his testimony, Blevins admitted that he knew that he did not have permission to hunt on the Younkin property. At the close of evidence, the county court took the matter of the other two counts under advisement. On May 11, the court entered an order finding Blevins guilty of hunting without permission, in violation of § 37-510, and subsequently ordered him to pay liquidated damages of $600, as required by § 37-614.

Blevins appealed his conviction for hunting without permission and the liquidated damages order to the district court for Kearney County. After a hearing, the district court reversed Blevins' conviction and the liquidated damages order. The county attorney for Kearney County thereafter filed an application for leave to docket an appeal to this court, pursuant to § 29-2315.01.

## ASSIGNMENTS OF ERROR

The State has assigned three errors on this appeal, but for purposes of our discussion, we have consolidated them into one

assigned error, namely, that the district court erred in applying the wrong statute and evidentiary standard in reviewing Blevins' conviction.

## EFFECT OF THIS REVIEW

■ This is an appeal by a county attorney, pursuant to § 29-2315.01, which states in part: "The county attorney may take exception to any ruling or decision of the court made during the prosecution of a cause by presenting to the trial court the application for leave to docket an appeal with reference to the rulings or decisions of which complaint is made." Neb. Rev. Stat. § 29-2316 (Cum. Supp. 1992) sets out the effect of the appellate court's ruling pursuant to § 29-2315.01:

> The judgment of the court in any action taken pursuant to section 29-2315.01 shall not be reversed nor in any manner affected when the defendant in the trial court has been placed legally in jeopardy, but in such cases the decision of the appellate court shall determine the law to govern in any similar case which may be pending at the time the decision is rendered or which may thereafter arise in the state. When the decision of the appellate court establishes that the final order of the trial court was erroneous and the defendant had not been placed legally in jeopardy prior to the entry of such erroneous order, the trial court may upon application of the county attorney issue its warrant for the rearrest of the defendant and the cause against him or her shall thereupon proceed in accordance with the law as determined by the decision of the appellate court.

In the present case, Blevins was placed in jeopardy, and therefore, our decision does not affect the order entered by the district court, but affects similar cases that may presently be pending or arise hereafter.

## DISCUSSION

The primary issue on this appeal arises out of the relationship between two statutes that make it a crime to hunt on private property without permission. The first statute, § 37-510, provides in part: "It shall be unlawful for anyone to hunt for any game, wild animal, or bird or fish upon any private lands

without permission of the owner." The second statute, Neb. Rev. Stat. § 37-213.04 (Reissue 1993), provides that the operator of property which has been posted with signs reading "Hunting By Written Permission Only" shall have the privilege of permitting or denying hunting privileges on such property. The specific posting requirements for such signs are set out in Neb. Rev. Stat. § 37-213.03 (Reissue 1993).

With regard to count II, Blevins was originally charged with hunting without permission under § "37-213.03," but the complaint was later amended to charge Blevins under § 37-510 on this count. In its order reversing Blevins' conviction, the district court agreed with Blevins' argument that in order to secure a valid conviction for hunting without permission under § 37-510, the State must prove as an element of the crime that the land was posted in accordance with § 37-213.03.

In its brief, the State asserts that § 37-510 defines a crime separate from that defined in § 37-213.04. The State points out that § 37-213.03 states that an operator of a farm or ranch *may* post his or her property with signs reading "Hunting By Written Permission Only." If the property is so posted, the State argues, an individual must have the requisite written permission before hunting on such property. However, if the property is not posted as set forth in § 37-213.03, then *written* permission is not required, but § 37-510 nonetheless requires an individual to secure some form of permission from the owner or tenant before a person may lawfully hunt on such nonposted property.

## LEGISLATIVE HISTORY

■ "One of the fundamental principles of statutory construction is to attempt to ascertain the legislative intent and to give effect to that intent. To ascertain the intent of the Legislature, a court may examine the legislative history of the act in question." *Georgetowne Ltd. Part. v. Geotechnical Servs.*, 230 Neb. 22, 28, 430 N.W.2d 34, 39 (1988).

■ "All statutes relating to the same subject are considered as parts of a homogeneous system, and later statutes are considered as supplementary to preceding enactments. Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together." *Id.*

at 30, 430 N.W.2d at 39. Accord *Matzke v. City of Seward*, 193 Neb. 211, 226 N.W.2d 340 (1975), *overruled on other grounds, First Assembly of God Church v. City of Scottsbluff*, 203 Neb. 452, 279 N.W.2d 126 (1979).

Section 37-510 was enacted in 1929, while §§ 37-213.02 to 37-213.06 were enacted in 1963. The legislative history of §§ 37-213.02 to 37-213.06 reveals the Legislature's intent with regard to the relationship between §§ 37-510 and 37-213.04.

The committee hearings and floor debate of 1963 Neb. Laws, ch. 199, §§ 1-5, pp. 646-47 (L.B. 420), which is codified at §§ 37-213.02 to 37-213.06, indicate that its purpose was to reduce the potential for retaliation against landowners and tenants from persons who were convicted of hunting on their land without permission. See Committee on Agriculture Hearing, L.B. 420, 73d Leg., 1st Sess. 2-3 (Feb. 7, 1963). Section 2, p. 646, of L.B. 420 permitted a landowner or tenant to post his or her land with signs marked "Hunting By Written Permission Only." If the land was posted in such a manner, anyone who hunted on the property was required to have a written permit, signed by the landowner or tenant, stating that the hunter had permission to hunt on such property. In passing L.B. 420, the Legislature intended to make it easier for the State to prosecute such violations without the participation of the landowner or tenant. Statement of Intent, L.B. 420, Committee on Agriculture, 73d Leg., 1st Sess. (Feb. 6, 1963). If an accused did not possess written permission to hunt, there would potentially be a reduced need to have the landowner or tenant appear in court to identify the accused and/or testify that he or she did not give the accused permission to hunt on the property. See Committee on Agriculture Hearing, *supra* at 2-3.

The legislative history of L.B. 420 also makes it clear that the Legislature, in passing L.B. 420, did not intend to affect the validity or operation of § 37-510. "Courts should not give an interpretation to a statute which would have the effect of nullifying another statute, when obviously that was not the clear legislative intent." *Georgetowne Ltd. Part.*, 230 Neb. at 30, 430 N.W.2d at 40. Accord *Livestock Carriers Div. of M. C. Assn. v. Midwest Packers Traf. Assn.*, 191 Neb. 1, 213 N.W.2d 443 (1973). The history indicates that there was an amendment

to L.B. 420 which would have repealed § 37-510, but the amendment was rejected. Floor Debate, 73d Leg., 1st Sess. 727-28 (Mar. 20, 1963). The reason for the rejection was that many landowners, particularly those who owned large farms or ranches, did not want to endure the burden of posting their property in order to protect it from hunters. *Id.* The legislative history of L.B. 420 thus establishes that persons who hunt on unposted private property are still required to obtain permission to hunt on such property under § 37-510.

In light of the above, we find that the district court erroneously held that the State was required to prove that the land was posted as required by § 37-213.03 in order to convict Blevins for hunting without permission under § 37-510.

## CONCLUSION

Based upon the language of §§ 37-510 and 37-213.02 to 37-213.06, as well as the legislative history of §§ 37-213.02 to 37-213.06, we hold that persons who hunt on private property without permission are subject to prosecution under § 37-510 even if the property is not posted. The county attorney's exceptions are sustained.

EXCEPTIONS SUSTAINED.