751 N.W.2d 635 (2008)
276 Neb. 57
Steven MAHNKE, M.D., Appellee,
v.
STATE of Nebraska, DEPARTMENT OF HEALTH AND HUMAN SERVICES REGULATION AND LICENSURE, Appellant.
No. S-06-918.
Supreme Court of Nebraska.
July 11, 2008.
*638 Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellant.
William M. Lamson, Jr., and Denise M. Destache, of Lamson, Dugan & Murray, L.L.P., Omaha, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

I. SUMMARY
The State brought disciplinary charges against Steven Mahnke, M.D., alleging Mahnke engaged in unprofessional conduct. Following a hearing before the hearing officer, the director of the Department of Health and Human Services Regulation and Licensure (the Department) suspended Mahnke's license to practice medicine and surgery in Nebraska for 90 days. Mahnke moved for judicial review. An issue before the district court was whether the locality rule applied in disciplinary actions for unprofessional conduct. The locality rule is the statutory standard of care for medical malpractice actions under Neb.Rev.Stat. § 44-2810 (Reissue 2004). The district court concluded that the locality rule does apply and determined that the State failed to prove unprofessional conduct under that standard.
The State appealed the district court's decision regarding the locality rule, but we believe the threshold issue is whether the State may discipline a physician for a single act of "ordinary negligence." We use the term "ordinary negligence" here to mean medical negligence that does not show a physician's gross incompetence or gross negligence in treating a patient or a pattern of negligent conduct. We conclude that the State may not discipline a physician for a single act of ordinary negligence. We affirm the district court's reversal of Mahnke's discipline.

II. BACKGROUND
Mahnke has practiced medicine as a board-certified family practice physician in Central City, Nebraska, since 1984. R.C. had been Mahnke's patient since 1985. In 2003, she became pregnant. On December 10, R.C. reported that she had been nauseated and feverish for 2 to 3 days and was experiencing brown vaginal discharge. Mahnke ordered an ultrasound. The radiologist informed Mahnke of fetal demise and stated that the fetus looked like it was probably 13 to 14 weeks into gestation.
Mahnke gave R.C. the option to have an obstetrician-gynecologist in Hastings do a dilation and curettage (D&C) or to have Mahnke do it in Central City. R.C. decided that Mahnke should do the D&C in Central City, and the surgery was scheduled for the following morning at the Litzenberg Memorial County Hospital.
Mahnke did the D&C on December 11, 2003. He initially used a dull curette. R.C. started bleeding "pretty rapidly" soon after the surgery began. Mahnke had difficulty separating the placenta from the uterine wall. He decided he needed to *639 switch to a sharp curette to remove the placenta. After changing to the sharp curette, Mahnke was eventually able to free the placenta. In the process, he perforated the uterus. R.C.'s bleeding slowed after Mahnke removed the placenta. Following the surgery, Mahnke did what he could to stabilize R.C, but she went into cardiac arrest. R.C. was taken by helicopter to St. Elizabeth Regional Medical Center in Lincoln, where she later died. Pathology reports later showed that R.C. suffered from placenta increta. This is a rare condition in which the placenta invades the muscle layer of the uterus, making it difficult to separate the placenta from the wall of the uterus.
In March 2005, the State filed its operative petition for disciplinary action against Mahnke. In that petition, the State alleged that his conduct constituted unprofessional conduct and practice beyond the authorized scope. But the State later moved to dismiss the allegation of practice beyond the authorized scope, leaving only the allegations of unprofessional conduct under Neb.Rev.Stat. § 71-148 (Reissue 2003) and 172 Neb. Admin. Code, ch. 88, § 013 (1999). At the hearing, the State's expert testified that Nebraska family practitioners or obstetrician-gynecologists would provide substandard care if they used dull curettage instead of suction on a second-trimester fetal demise.
Following the hearing, the director found that Mahnke's conduct was unprofessional conduct and practice outside the normal standard of care in Nebraska. The director entered an order suspending Mahnke's license for 90 days, requiring a refresher course in obstetrics, prohibiting him from performing D&C or dilation and evacuation procedures except to save the mother's life or in an emergency, and imposing a 2-year probation upon reinstatement.
Mahnke petitioned the district court for judicial review. The court granted his motion to stay the director's order, on the condition that he not engage in any obstetrical procedures while the case is pending.
Mahnke argued that in determining whether his conduct was unprofessional, the conduct must be judged by the locality rule that applies in professional negligence actions under the Nebraska Hospital-Medical Liability Act. The State argued that the locality rule does not apply to unprofessional conduct in disciplinary proceedings and that Mahnke's conduct should be judged by the national standard of care. The court agreed with Mahnke that the locality rule did apply in determining whether his acts constituted unprofessional conduct for the disciplinary action. Under that standard, the court concluded that the State failed to present clear and convincing evidence that Mahnke's treatment of R.C. was unprofessional conduct under Nebraska's Uniform Licensing Law or § 013.18 of the Department's regulations. The court reversed the director's order.

III. ASSIGNMENTS OF ERROR
The State assigns, restated, that the district court erred in (1) applying the locality rule from the Nebraska Hospital-Medical Liability Act when construing the "unprofessional conduct" discipline grounds and (2) concluding, after erroneously judging the evidence by the locality rule, that the State failed to prove unprofessional conduct by clear and convincing evidence.

IV. STANDARD OF REVIEW
[1, 2] The State appealed the district court's order under Neb.Rev.Stat. § 71-159 (Reissue 2003). That statute provides that "[b]oth parties [to a disciplinary proceeding under the Uniform Licensing Law] shall have the right of appeal, and the appeal shall be in accordance with the *640 Administrative Procedure Act." A judgment or final order rendered by a district court in a judicial review under the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[1] When reviewing such an order, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[2]
[3] The meaning and interpretation of statutes and regulations are questions of law for which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[3]

V. ANALYSIS
In its amended petition, the State alleged that Mahnke should be disciplined under Neb.Rev.Stat. § 71-147(10)(Reissue 2003) because his conduct constituted unprofessional conduct as defined in § 71-148 of the Uniform Licensing Law and § 013.18 of the Department's regulations. At all relevant times, the provisions in §§ 71-147 and 71-148 appeared in the Uniform Licensing Law in chapter 71 of the Nebraska Revised Statutes. The Legislature has since transferred these provisions to the Uniform Credentialing Act in chapter 38. We will retain the references to chapter 71. We begin by reviewing the framework of these statutory provisions and the Department's regulation.

1. STATUTORY AND REGULATORY FRAMEWORK
Section 71-147 of the Uniform Licensing Law sets out the general grounds for disciplinary action against a professional license. It states in relevant part: "A license. . . to practice a profession may be. . . limited, revoked, or suspended . . . when the . . . licensee . . . is guilty of any of the following acts or offenses: . . . (10) Unprofessional conduct." Unprofessional conduct is defined in § 71-148 of the Uniform Licensing Law. The introductory paragraph of § 71-148 provides: "For purposes of section 71-147, unprofessional conduct means any departure from or failure to conform to the standards of acceptable and prevailing practice of a profession or occupation or the ethics of the profession or occupation . . ." The State's first charge alleged unprofessional conduct under this general definition in the introductory paragraph of § 71-148.
Following this opening paragraph of § 71-148 are 22 subsections. In subsections (1) through (21), § 71-148 sets out a nonexclusive list of 21 acts of unprofessional conduct. In its second unprofessional conduct charge, the State did not allege that any of these specific examples were applicable. Instead, it alleged unprofessional conduct under subsection (22). Under subsection (22), unprofessional conduct also includes "[s]uch other acts as may be defined in rules and regulations adopted and promulgated by the board of examiners in the profession of the . . . licensee. . . with the approval of the department." Thus, the State's second charge alleges unprofessional conduct under the Department's regulations.
Title 172, chapter 88, of the Nebraska Administrative Code contains the Department's regulations governing the practice of medicine and surgery. Within chapter 88 is § 013, which defines certain acts as "unprofessional conduct, pursuant to . . . § 71-148(22), and where applicable, further construes the unlawful or unprofessional acts listed in . . . §§ 71-147 and 71-148." *641 Section 013.18 defines unprofessional conduct to include "[a]ny conduct or practice outside the normal standard of care in the State of Nebraska which is or might be harmful or dangerous to the health of the patient or the public." This is the only regulatory provision the State relies on. Section 013.18 provides no definition for "normal standard of care in the State of Nebraska."
In summary, § 71-147(10) provides that disciplinary action may be taken against a professional license for "[u]nprofessional conduct" by the licensee. Section 71-148 generally defines "unprofessional conduct" as "any departure from or failure to conform to the standards of acceptable and prevailing practice of a profession." It also includes, under subsection (22), "acts as may be defined in rules and regulations." Finally, § 013.18 of the Department's regulations governing the practice of medicine and surgery defines "unprofessional conduct" to include "[a]ny conduct or practice outside the normal standard of care in the State of Nebraska."

2. THE THRESHOLD QUESTION IS WHETHER THE STATE MAY DISCIPLINE A PHYSICIAN FOR A SINGLE ACT OF ORDINARY NEGLIGENCE
The State argues on appeal that the district court erred in determining the locality rule is the standard of conduct in a disciplinary action for unprofessional conduct. Mahnke contends, however, that we should affirm the district court's decision regardless of the standard applied, because the State may not discipline him for a single act of alleged negligence. Mahnke argues that the relevant statutes do not provide for discipline against a physician based on ordinary negligence. He further argues that § 013.18 of the Department's regulations could subject a physician to discipline for an act of ordinary negligence and is therefore invalid as inconsistent with the statutes.
The State responds that it does not contend a single act of ordinary negligence would be grounds for discipline. The State argues that it "never charged ... Mahnke with `ordinary negligence,'" but instead charged him with unprofessional conduct.[4] In fact, the State further concedes, "[N]or do the disciplinary statutory provisions of §§ 71-147 and 71-148 of the Uniform Licensing Law state that `ordinary negligence' is grounds for disciplining a medical license."[5] The State apparently believes that any act of medical negligence may be grounds for discipline if the charge is couched as unprofessional conduct rather than in negligence terms. This artificial distinction is not convincing. We conclude that the threshold question is whether the State can subject a physician to discipline for a single act of ordinary negligence.

3. THE GENERAL DEFINITION OF UNPROFESSIONAL CONDUCT IN § 71-148 DOES NOT INCLUDE A SINGLE ACT OF ORDINARY NEGLIGENCE
[4] As noted, in its first charge, the State alleged that Mahnke's conduct constituted unprofessional conduct as generally defined in the introductory paragraph of § 71-148: i.e., "any departure from or failure to conform to the standards of acceptable and prevailing practice of a profession." We recognize that this broad definition could be interpreted to include as unprofessional conduct a physician's breach of a standard of care in treating a patient. We believe, however, that a 1994 amendment to § 71-147 shows that this general definition in § 71-148 does not include as unprofessional conduct a single act of ordinary negligence.
*642 [5-7] To extract meaning from statutes and regulations, we are guided by familiar statutory canons. We construe all statutes relating to the same subject as parts of a homogeneous system and later statutes as supplementary to preceding enactments.[6] Statutes relating to the same subject, although enacted at different times, are in pari materia, and we construe them together.[7] To ascertain the proper meaning of a statute, we may refer to later as well as earlier legislation upon the same subject.[8]
Subsection (5) of § 71-147 is critical to our analysis. Besides subsection (10) (unprofessional conduct), § 71-147 contains 22 other subsections that provide grounds for professional discipline. Under subsection (5), the State may discipline a professional for "[p]ractice of the profession (a) fraudulently, (b) beyond its authorized scope, (c) with manifest incapacity, (d) with gross incompetence or gross negligence, or (e) in a pattern of negligent conduct."[9] Subsection (5) defines "pattern of negligent conduct" as "a continued course of negligent conduct in performing the duties of the profession."
The Legislature added subsection (e) to § 71-147(5) as a ground for discipline in 1994.[10] This addition was after the Legislature added the general definition of unprofessional conduct to the introductory paragraph of § 71-148 in 1993.[11] We find significant the Legislature's addition of "pattern of negligent conduct" in § 71-147(5)(e) after it had added the general definition in § 71-148.
[8] If the Legislature had originally intended or inadvertently permitted the State to discipline a licensed professional for a single act of ordinary negligence under the general definition of unprofessional conduct in § 71-148, then adding subsection (e) to § 71-147(5) changed that intent or oversight. When the Legislature adopts an amendment, we presume that it intended to make some change in the existing law.[12] The only purpose for adding § 71-147(5)(e) would have been to clarify that the State may not base a disciplinary action on a single act of negligent conduct that fails to show a pattern.
Conversely, if the Legislature did not originally intend to allow the State to discipline a licensed professional for a single act of ordinary negligence under the general definition in § 71-148, then adding "a pattern of negligent conduct" in § 71-147(5)(e) only clarified that original intent.
Therefore, regardless of the Legislature's original intent or oversight about whether the general definition of unprofessional conduct in § 71-148 included a single act of ordinary negligence, we conclude that its addition of § 71-147(5)(e) makes clear that the definition does not currently encompass such a single act. Thus, the State's first charge fails to state a ground for discipline because the State may not discipline Mahnke under the general definition *643 of unprofessional conduct in § 71-148 for his single allegedly negligent act.

4. SECTION 013.18 OF THE DEPARTMENT'S REGULATIONS, DEFINING UNPROFESSIONAL CONDUCT, IS INVALID AS INCONSISTENT WITH THE AUTHORITY GRANTED TO THE DEPARTMENT UNDER THE UNIFORM LICENSING LAW
[9] In its second unprofessional conduct charge, the State alleged that Mahnke's conduct constituted unprofessional conduct as defined in § 013.18 of the Department's regulations. As noted, § 013.18 defines unprofessional conduct to include "[a]ny conduct or practice outside the normal standard of care ... which is or might be harmful or dangerous to the health of the patient or the public." (Emphasis supplied.) We agree with Mahnke that this regulation is broad enough to subject a physician to discipline for ordinary negligence. We also agree that this result is inconsistent with the authorizing statutes in the Uniform Licensing Law.
[10] We have stated that to be valid, a rule or regulation must be consistent with the statute under which the rule or regulation is promulgated.[13] Section 71-148(22) authorizes the relevant board of examiners, with the approval of the Department, to adopt rules and regulations defining acts that constitute unprofessional conduct. Therefore, the Department's adoption of specific acts constituting unprofessional conduct in § 013 was clearly within the Legislature's contemplation if the acts are consistent with the statute's standards. But only § 013.18 of the regulation is at issue. So our focus is limited to whether this much broader and undefined provision is consistent with the authorizing statutes.

(a) Section 71-147 Does Not Include a Single Act of Ordinary Negligence as a Ground for Discipline
[11] Mahnke argues that § 013.18 of the Department's regulations is inconsistent with the Uniform Licensing Law because the statutes do not contemplate ordinary negligence as a ground for discipline. Like Mahnke, we detect a tension between § 013.18 of the regulations and §§ 71-147 and 71-148.
As discussed, § 71-147(5) includes as grounds for professional discipline "gross negligence" and "a pattern of negligent conduct." Section 71-147 does not, however, provide that a single act of ordinary negligence may be grounds for discipline. Mahnke argues that if the Legislature intended ordinary negligence to be actionable as a disciplinary action, the Legislature would have included it in subsection (5). We agree that the Legislature's specific inclusion of "gross negligence" and "a pattern of negligent conduct," with no mention of ordinary negligence, is telling. But we also consider § 71-148 to determine whether the Legislature has shown a contrary intent to include ordinary negligence within the meaning of unprofessional conduct.

(b) A Single Act of Ordinary Negligence Does Not Come Within the Meaning of Unprofessional Conduct Under § 71-148
[12] We have decided that the general definition for unprofessional conduct in the introductory paragraph of § 71-148 does not encompass the single breach of a physician's standard of care.
Following the general definition, § 71-148 sets out a nonexclusive list of 21 acts *644 that constitute unprofessional conduct. This list further shows that the Legislature did not intend for a single act of ordinary negligence to constitute unprofessional conduct. None of these 21 specific acts shows that the Legislature intended for a single act of ordinary negligence in the general treatment of patients to constitute unprofessional conduct. The acts do not include the breach of a physician's standard of care in treating patients generally.
[13] We recognize that § 71-148(13) could be interpreted to include as unprofessional conduct a physician's breach of a standard of care in treating a patient. That subsection defines unprofessional conduct to include "[p]erformance by a physician of an abortion ... under circumstances when he or she will not be available for ... at least forty-eight hours for postoperative care unless such postoperative care is delegated to and accepted by another physician." The Legislature added that subsection (originally enumerated (11)) as an act constituting unprofessional conduct in 1981.[14] This was before the Legislature added the general definition of unprofessional conduct in the introductory paragraph of § 71-148 in 1993 and before it added "a pattern of negligent conduct" to § 71-147(5) in 1994. Arguably, the Legislature intended here to impose a statutory standard of care for the treatment of patients seeking abortions, the breach of which would allow the State to discipline the physician. But even under that interpretation, the standard of care in § 71-148(13) would not extend to the treatment of patients generally. Subsection (13) is limited to the specific circumstance of postoperative care following abortions.
The legislative history of § 71-148(13) supports this analysis. During the committee hearing on L.B. 466,[15] the bill that added what is now subsection (13), the bill's principal introducer explained the bill's purpose:
LB 466 gives us an opportunity to provide adequate postoperative care for young gir[l]s and women who obtained abortions. ... We have a situation in this state of very poor followup care for abortions which is medically indefensible. To help remedy this situation, we as a group and myself urge you to advance LB 466. ...[16]
One problem discussed during the committee hearing concerned a doctor traveling to a town to perform abortions and then leaving town at the end of the day without arranging for proper followup care. The Legislature designed L.B. 466 to remedy the concern that a patient could be left without access to postoperative care should complications arise following an abortion. Therefore, when the Legislature added the subsection at issue to § 71-148, it intended to create only a specific standard of care for the treatment of patients seeking abortions. It did not enlarge the Legislature's previous concept of unprofessional conduct to include single acts of ordinary negligence in treating patients generally. Nor do we read any of the other subsections in § 71-148 as defining unprofessional conduct to include ordinary negligence in the treatment of patients generally.
Thus, the 21 acts of unprofessional conduct under § 71-148 support the conclusion that the Legislature did not intend to include a single act of ordinary negligence as a ground for disciplinary action. Although § 71-148(22) includes as unprofessional *645 conduct "such other acts as may be defined in rules and regulations," those rules and regulations are confined to the standards set out in §§ 71-147 and 71-148.
[14-17] We have held that it is a fundamental general principle that the Legislature may not delegate legislative power to an administrative or executive authority.[17] An administrative agency is limited in its rulemaking authority to powers granted to the agency by the statutes the agency is to administer. The agency may not employ its rulemaking power to modify, alter, or enlarge portions of its enabling statute.[18] We do not interpret § 71-148(22) as granting the Department authority to enact a regulation defining unprofessional conduct to include single acts of ordinary negligence in the treatment of patients generally. Allowing the State to discipline a physician for such acts under § 013.18 would enlarge the provisions in §§ 71-147 and 71-148 and would be inconsistent with the authority granted to the Department under the Uniform Licensing Law. We conclude that § 013.18 does not authorize the State to discipline a physician for a single act of ordinary negligence. Therefore, the State may not discipline Mahnke under § 013.18 for the allegedly negligent act of using a dull curette rather than suction for a second-trimester fetal demise. The State's second unprofessional conduct charge fails to state a ground for discipline.

VI. CONCLUSION
Although a physician's single act of ordinary negligence can lead to tragic consequences, the law must not turn on the facts of a single case. The Legislature in §§ 71-147 and 71-148 has concluded that a physician should not be subject to discipline for a single act of ordinary negligence. Therefore, we conclude that § 013.18 of the Department's regulations is invalid to the extent it can be interpreted to permit discipline for a single act of ordinary negligence. The State has not alleged gross negligence or a pattern of negligent conduct and may not discipline Mahnke for his single act of alleged ordinary negligence. Thus, we affirm the district court's reversal of the Department's order disciplining Mahnke.
AFFIRMED.
NOTES
[1] Zwygart v. State, 273 Neb. 406, 730 N.W.2d 103 (2007).
[2] Id.
[3] Betterman v. Department of Motor Vehicles, 273 Neb. 178, 728 N.W.2d 570 (2007).
[4] Reply brief for appellant at 2.
[5] Id.
[6] State v. Blevins, 3 Neb.App. 111, 523 N.W.2d 701 (1994). See, also, Georgetowne Ltd. Part. v. Geotechnical Servs., 230 Neb. 22, 430 N.W.2d 34 (1988).
[7] Blevins, supra note 6. See, also. Georgetowne Ltd. Part., supra note 6.
[8] See Gage Cty. Bd. v. Nebraska Tax Equal. & Rev. Comm., 260 Neb. 750, 619 N.W.2d 451 (2000).
[9] § 71-147(5) (emphasis supplied).
[10] See 1994 Neb. Laws. L.B. 1223.
[11] See 1993 Neb. Laws, L.B. 536.
[12] See Kalisek v. Abramson, 257 Neb. 517, 599 N.W.2d 834 (1999).
[13] Robbins v. Neth, 273 Neb. 115, 728 N.W.2d 109 (2007); City of Omaha v. Kum & Go. 263 Neb. 724, 642 N.W.2d 154 (2002).
[14] See 1981 Neb. Laws, L.B. 466.
[15] Id.
[16] Public Health and Welfare Committee Hearing, L.B. 466, 87th Leg., 1st Sess. 2-3 (Feb. 23, 1981).
[17] Schumacher v. Johanns, 272 Neb. 346, 722 N.W.2d 37 (2006).
[18] See, DLH, Inc. v. Nebraska Liquor Control Comm., 266 Neb. 361, 665 N.W.2d 629 (2003); County Cork v. Nebraska Liquor Control Comm., 250 Neb. 456, 550 N.W.2d 913 (1996).