in § 21-2014(21). For evidence to be relevant to the standing issue in this case, the evidence must show whether shares of WBI were registered in Bruce's name or whether Bruce was a beneficial owner of shares to the extent of rights granted by a nominee certificate on file with WBI. The exhibits at issue do not contain information regarding these facts. Thus, we determine that the district court did not abuse its discretion when it did not receive these exhibits into evidence.

## CONCLUSION

The district court did not err when it determined that Bruce and Annette lacked standing to bring this action for the judicial dissolution of WBI. The district court did not abuse its discretion when it did not admit exhibits 19, 20, and 22 through 27 into evidence. Accordingly, we affirm the order of the district court which dismissed the complaint.

AFFIRMED.

MCCORMACK, J., participating on briefs.
WRIGHT, J., not participating.

———————————

CYNTHIA RAE CANIGLIA, APPELLANT, V.
JASON ARTHUR CANIGLIA, APPELLEE.
___ N.W.2d ___

Filed May 17, 2013.    No. S-12-794.

1. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.
2. **Modification of Decree: Appeal and Error.** Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.
3. **Parent and Child: Child Support.** Support of one's children is a fundamental obligation which takes precedence over almost everything else.
4. **Statutes.** Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.
5. **Modification of Decree: Minors.** A decree in a divorce case, insofar as minor children are concerned, is never final in the sense that it cannot be changed.
6. **Statutes.** Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together.

7. ____. All statutes relating to the same subject are considered as parts of a homogeneous system, and later statutes are considered as supplementary to preceding enactments.
8. **Modification of Decree: Child Support: Proof.** A party's responsibility under Neb. Rev. Stat. § 42-364.17 (Reissue 2008) for reasonable and necessary medical, dental, and eye care; medical reimbursements; daycare; extracurricular activity; education; and other extraordinary expenses of the child to be made in the future may be modified if the applicant proves that a material change in circumstances has occurred since entry of the decree or a previous modification.
9. **Evidence: Appeal and Error.** Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give great weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Affirmed.

Margaret M. Zarbano for appellant.

Kristina B. Murphree and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

In this appeal from an order modifying a dissolution decree's financial arrangements for a child, the primary question is whether Nebraska law allows the allocation of a child's extraordinary expenses, based on Neb. Rev. Stat. § 42-364.17 (Reissue 2008), to be modified. Because extraordinary expenses are merely an incident of the parents' responsibility to support their child, these expenses can be modified. And considering the modifications ordered by the district court in light of the evidence, we find no abuse of discretion. We affirm the modification of the parties' dissolution decree.

## BACKGROUND

The marriage of Cynthia Rae Caniglia and Jason Arthur Caniglia was dissolved by consent decree in June 2010. This decree required Jason to pay child support for the parties' minor child in the amount of $722 per month and to be

responsible for half of "extra curricular [sic] activities, education . . . and other extraordinary expenses of the minor child," pursuant to § 42-364.17. A subsequent order nunc pro tunc ordered each party to pay 50 percent of work-related childcare expenses.

After entry of the divorce decree, Jason became unemployed. He filed a petition to modify the decree, requesting, among other things, modification of child support and of his responsibility for extraordinary expenses and childcare expenses.

Following a hearing on Jason's petition for modification, the district court entered a modification order finding that there had been a material change in circumstances warranting a change in child support and some of Jason's other financial obligations to the child. The court reduced Jason's child support obligation to $375 per month and his responsibility for work-related daycare expenses to 36 percent. The court left Jason responsible for 50 percent of extracurricular activities, education, and other extraordinary expenses, but modified the provision addressing these expenses "to the extent that the custodial parent may not incur extra expenses not currently being paid, without the approval of the non-custodial parent."

Cynthia timely appeals. Pursuant to statutory authority, we moved the case to our docket.[1]

## ASSIGNMENTS OF ERROR

Cynthia alleges, reordered and restated, that the district court erred in (1) modifying the extraordinary expenses provision arising under § 42-364.17, (2) determining that there was a change in circumstances warranting a reduction in Jason's child support and childcare contribution percentage, and (3) modifying the decree of dissolution to require Jason to contribute only to expenses of which he approves.

## STANDARD OF REVIEW

[1] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[2]

---

[1] See Neb. Rev. Stat. § 24-1106 (Reissue 2008).

[2] *United States Cold Storage v. City of La Vista, ante* p. 579, ___ N.W.2d ___ (2013).

[2] Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion by the trial court.[3] The same standard applies to the modification of child support.[4]

## ANALYSIS

### MODIFICATION OF EXTRAORDINARY EXPENSES PROVISION

We begin by quoting the pertinent language of § 42-364.17, which states that "[a] decree of dissolution . . . shall incorporate financial arrangements for each party's responsibility for reasonable and necessary medical, dental, and eye care, medical reimbursements, day care, extracurricular activity, education, and other extraordinary expenses of the child and calculation of child support obligations."

Cynthia rather tersely argues that modification of child support is addressed in Neb. Rev. Stat. § 42-364(6) (Cum. Supp. 2012) and Neb. Ct. R. § 4-217 and that "[t]here is nothing in statute that allows for modification of the provisions under §42-364.17."[5] Although she does not amplify the connection, we understand her argument on brief as asserting that neither § 42-364(6) nor § 4-217 expressly refers to extraordinary expenses or § 42-364.17. At oral argument, Cynthia simply adhered to a straightforward argument that expenses allocated under § 42-364.17 are not subject to modification.

[3,4] Contrary to Cynthia's argument on brief, the language of § 42-364(6) is broad enough to encompass extraordinary expenses of a child. The first sentence of § 42-364(6) permits "[m]odification proceedings relating to *support*, custody, parenting time, visitation, other access, or removal of children from the jurisdiction . . . ." (Emphasis supplied.) Cynthia provides no authority for the proposition that "support" under § 42-364(6) does not include the items listed in § 42-364.17.

---

[3] *Metcalf v. Metcalf*, 278 Neb. 258, 769 N.W.2d 386 (2009).

[4] See *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009).

[5] Brief for appellant at 9.

Support of one's children is a fundamental obligation which takes precedence over almost everything else.[6] Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.[7] "Support" is commonly defined as "a means of livelihood, sustenance, or existence."[8] The common meaning of "support" clearly includes all of the incidents of a child's needs. Of course, one incident of "support" is the regular monthly payment established under the guidelines.[9] But the guidelines recognize other incidents of "support" that are wholly[10] or partly[11] outside of the monthly installment. The expenses stated in § 42-364.17—including, among others, extracurricular, education, and other extraordinary expenses—merely represent other incidents of "support" to be addressed in a dissolution decree.

The omission of the words "extraordinary expenses" in § 4-217 provides no support for Cynthia's argument. Section 4-217 merely provides a formula permitting a rebuttable presumption of a material change in circumstances. Elsewhere, the child support guidelines contemplate that extraordinary or unusual expenses will be addressed outside the guidelines' framework.[12]

[5] Under our case law, provisions of a divorce decree relating to children can always be modified. As we have stated, "A decree in a divorce case, insofar as minor children are concerned, is never final in the sense that it cannot be changed."[13] Consistent with this principle, Nebraska courts have ordered

---

[6] *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

[7] *J.M. v. Hobbs*, 281 Neb. 539, 797 N.W.2d 227 (2011).

[8] Webster's Third New International Dictionary of the English Language, Unabridged 2297 (1993).

[9] See Neb. Ct. R. § 4-207.

[10] See Neb. Ct. R. § 4-214.

[11] See Neb. Ct. R. § 4-215(B) (rev. 2011).

[12] See Neb. Ct. R. § 4-203 (rev. 2011).

[13] *Wulff v. Wulff*, 243 Neb. 616, 619, 500 N.W.2d 845, 849 (1993).

modification of child custody,[14] child support,[15] visitation,[16] supervised parenting time,[17] responsibility for childcare expenses,[18] and uninsured medical expenses.[19]

[6,7] Extraordinary expenses are no different than these other, clearly modifiable issues relating to children. Although § 42-364.17 was enacted much later than the original statutory scheme governing child support,[20] § 42-364.17 is now part of this same statutory scheme. Statutes relating to the same subject, although enacted at different times, are in pari materia and should be construed together.[21] All statutes relating to the same subject are considered as parts of a homogeneous system, and later statutes are considered as supplementary to preceding enactments.[22] Considering that Neb. Rev. Stat. §§ 42-364 to 42-364.16 (Reissue 2008 & Cum. Supp. 2012) explicitly govern child support, which is undoubtedly modifiable,[23] we see no reason why provisions based on § 42-364.17 should not be treated as a subset of child support and thus be subject to modification as well.

An appellate court will not look beyond a statute to determine legislative intent when the words are plain, direct, or unambiguous.[24] The words of § 42-364.17 are plain, direct, and unambiguous—the financial matters it governs are part of the

---

[14] See, e.g., *Capaldi v. Capaldi*, 235 Neb. 892, 457 N.W.2d 821 (1990); *Schnell v. Schnell*, 12 Neb. App. 321, 673 N.W.2d 578 (2003).

[15] See, e.g., *Incontro v. Jacobs, supra* note 4.

[16] See, e.g., *Smith-Helstrom v. Yonker*, 253 Neb. 189, 569 N.W.2d 243 (1997).

[17] See, e.g., *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001).

[18] See, e.g., *Mace v. Mace*, 9 Neb. App. 270, 610 N.W.2d 436 (2000).

[19] See, e.g., *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004).

[20] Compare Neb. Rev. Stat. § 42-353 (Cum. Supp. 2012).

[21] *Mahnke v. State*, 276 Neb. 57, 751 N.W.2d 635 (2008).

[22] *Id*.

[23] See *Incontro v. Jacobs, supra* note 4.

[24] *Moyera v. Quality Pork Internat.*, 284 Neb. 963, 825 N.W.2d 409 (2013).

support that parents must provide to their children. Thus, we do not consider the legislative history of § 42-364.17.

[8] We view § 42-364.17 in the context of the statutory scheme governing child support. In this context, it is clear that there is no persuasive reason for treating extraordinary expenses any differently from other issues relating to children. Thus, we hold that a party's responsibility under § 42-364.17 for reasonable and necessary medical, dental, and eye care; medical reimbursements; daycare; extracurricular activity; education; and other extraordinary expenses of the child to be made in the future may be modified if the applicant proves that a material change in circumstances has occurred since entry of the decree or a previous modification.

Our conclusion is consistent with the approach taken by other states. We have found no state that prohibits the modification of extraordinary expenses provisions in divorce decrees. To the contrary, numerous states actively allow such modification.[25] In the interest of brevity, we have cited only a small but representative selection of court opinions upholding the modification of extraordinary expenses provisions.

The district court did not err in determining that it had the power to modify the extraordinary expenses provision of the parties' divorce decree.

## Change in Circumstances

Cynthia also assigns error to the district court's determination that there was a change in circumstances warranting reduction in Jason's child support and childcare contribution. Essentially, she argues that he was at fault for his unemployment and should not have been granted a reduction in his financial obligations to the minor child.

At the time of the divorce decree, Jason was employed by Kellogg USA Inc. (Kellogg). Prior to entry of the decree, he

---

[25] See, e.g., *Chauvin v. Chauvin*, 69 So. 3d 1192 (La. App. 2011); *Pratt v. Ferber*, 335 S.W.3d 90 (Mo. App. 2011); *Schorr v. Schorr*, 96 A.D.3d 583, 948 N.Y.S.2d 14 (2012); *Kaplan v. Bugalla*, 188 S.W.3d 632 (Tenn. 2006); *Bjelland v. Bjelland*, Nos. 2008-CA-000523-MR, 2008-CA-001852-MR, 2010 WL 2573879 (Ky. App. June 25, 2010) (unpublished opinion).

was convicted of third degree domestic assault and sentenced to 130 days in jail. So as not to lose his job, he served much of his jail sentence on the weekends. He began doing so prior to entry of the decree. In September 2010, Jason took a 2-month leave from work at the advice of his psychiatrist, during which time he addressed his mental health issues and alcoholism and completed his jail sentence. Kellogg did not reinstate Jason after his leave, and in February 2011, it terminated his benefits.

Based on the evidence presented before the district court, there are two plausible explanations why Kellogg did not recall Jason and ultimately terminated his employment. We review the evidence in support of each explanation in turn.

Cynthia focuses on the evidence that termination of Jason's employment was caused by his conviction for third degree domestic assault and his absenteeism. She cites solely to Jason's testimony at an earlier hearing—over 1 year prior to the modification hearing—during which he stated that Kellogg "terminated" his employment "[b]ecause [he] had to serve some jail time, and it was an attendance policy out at Kellogg's, they have a strict attendance policy and [he] went over the attendance points."

At the modification hearing, however, there was no testimony that Jason's employment was terminated due to his conviction or alleged "absenteeism." Much to the contrary, Jason denied losing his job for employee misconduct, absenteeism, or other fault of his own and stated that he believed his employment was terminated due to his mental health issues. As for Jason's leave from work, his psychiatrist testified that she gave him a medical release from work for 2 months. According to Jason, because of this medical release, he believed he had medical authorization to be absent from work. Consistent with this belief, once Jason's condition improved and he received authorization to return to work, he immediately informed Kellogg that he could return to work on October 25, 2010. Yet Kellogg did not reinstate him. From that date through January 2011, Kellogg neither recalled Jason to work nor gave notice that his employment was terminated. In fact, Jason testified

that Kellogg records showed his status during those months as varying from "suspended indefinitely" to "illness with medical documentation." It was not until February 11 that Jason received notice that his employment had been terminated, at which time he found alternative employment. In Jason's new employment, his gross yearly income was $25,971, as compared to $44,344 at the time of the divorce decree.

[9] Although the evidence adduced at the modification hearing supports two conflicting explanations for Jason's loss of employment, we give weight to the version accepted by the district court. Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give great weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another.[26] In the order of modification, the district court explicitly accepted the evidence that Jason's employment was not terminated due to fault of his own, noting that "the loss of [Jason's] job at Kellogg's was not willful on his part." The district court did not abuse its discretion in concluding that Jason was not responsible for his loss of employment and consequent reduction in income. Likewise, the district court did not abuse its discretion in finding a change in circumstances sufficient to reduce Jason's child support and childcare contribution percentage. This assignment of error lacks merit.

## MODIFICATION OF CUSTODIAL PARENT'S DECISIONMAKING AUTHORITY

In Cynthia's final assignment of error, she argues that the district court abused its discretion in modifying the divorce decree so that Jason would be responsible for a portion of extraordinary expenses, including extracurricular activities, only if he agreed to the expenses. She contends that this deprives her of a custodial parent's right and responsibility "to make decisions regarding the welfare of the minor child including extracurricular activities."[27] It is important to note that the

---

[26] *Mathews v. Mathews*, 267 Neb. 604, 676 N.W.2d 42 (2004).

[27] Brief for appellant at 12.

court's change applied only to "extra expenses not currently being paid." Thus, the court's order did not affect ongoing expenses already in place.

At the modification hearing, Jason presented evidence that Cynthia incurred educational and extracurricular expenses for the minor child "just to make everything as expensive as possible for [him]." While Cynthia denied doing so, it was within the province of the district court to assess her credibility and to accept or reject this testimony. By modifying the extraordinary expenses provision so as to require Jason's approval for additional expenses, the court obviously adopted the view that Cynthia had used her decisionmaking authority in a vindictive manner. We accord weight to the district court's acceptance of this evidence.

In light of the evidence that Cynthia incurred extraordinary expenses solely to create financial strain for Jason, we cannot say that it was an abuse of discretion to modify the extraordinary expenses provision to require Jason's approval. We affirm the modification of the divorce decree as ordered by the district court.

## CONCLUSION

In the absence of any persuasive reason why extraordinary expenses should be treated differently than any other issue regarding children, we hold that a party's responsibility under § 42-364.17 for reasonable and necessary medical, dental, and eye care; medical reimbursements; daycare; extracurricular activity; education; and other extraordinary expenses of the child to be made in the future may be modified if the applicant proves that a material change in circumstances has occurred since entry of the decree or a previous modification. Giving weight to the district court's acceptance of the evidence that Jason's employment was not terminated due to his own misconduct and that Cynthia incurred extracurricular expenses so as to financially burden Jason, we find no abuse of discretion in the determination that there was a change in circumstances warranting modification of the parties' divorce decree. We affirm the order of modification.

Affirmed.